Filed 10/3/13  P. v. Mandujano CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|   |   |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RIGOBERTO RAUL MANDUJANO,<br><br>        Defendant and Appellant. | B243855<br><br>(Los Angeles County Super. Ct.<br> No. KA092999) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Affirmed.

John Doyle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Lawrence M. Daniels, Supervising Deputy Attorney General, and Connie H. Kan, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant and appellant Rigoberto Raul Mandujano was convicted by jury of the willful, deliberate, and premeditated attempted murder of Michael Johnson. (Pen. Code, §§ 664, 187.)[1] The jury found true allegations that defendant used a firearm (§§ 12022.5, subd. (a), 12022.53, subds. (b)-(d)) and personally inflicted great bodily injury on Johnson (§ 12022.7, subd. (a)). The trial court sentenced defendant to 7 years to life for the attempted murder, enhanced by 25 years to life for the firearm use under section 12022.53, subdivision (d).[2]

In his timely appeal from the judgment, defendant contends: (1) the trial court failed to properly evaluate whether the prosecutor had exercised peremptory challenges for improper racial or ethnic purposes under *Batson v. Kentucky* (1986) 476 U.S. 79 and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Batson/Wheeler*); and (2) the trial court abused its discretion in denying defendant's motion for mistrial after testimony indicating defendant was believed to be a member of a street gang. We affirm. Defendant has failed to demonstrate error under *Batson/Wheeler*, and denial of the motion for mistrial was not prejudicial error.

## FACTS

Johnson was asked by Rosie Duran, with whom he lived in an apartment along with her family, to talk to a friend named Ismael, whose son had been inhaling dangerous gases. Johnson walked one block to where Ismael lived, where he came in contact with defendant and others. Defendant accused Johnson of having an affair with Nicholwaia Butler, the wife of their recently deceased friend, which Johnson denied. Defendant punched Johnson in the eye, after which a fight ensued with Johnson, a much larger man,

---

[1] All statutory references are to the Penal Code, unless otherwise stated.

[2] The trial court dismissed the great bodily injury allegation and a prior prison term finding pursuant to section 1385. Sentencing on the additional firearm use findings was stayed under section 654.

gaining the upper hand by placing defendant in a choke hold. The fight ended when another man intervened. Johnson left the area, walking in the direction of his apartment.

Johnson stopped along the way at Syllia Camacho's apartment to ask for a cigarette, telling her he had just fought with defendant, whom he called "Rigo." After leaving Camacho, Johnson unsuccessfully asked several others on the street for a cigarette. Johnson sat on a car in the carport of his apartment for a few minutes, when defendant and another man approached. Defendant asked if they still had a problem. Johnson said yes, and defendant pulled out a gun and pointed it at Johnson. Johnson backed away while telling defendant to put down the gun, but Johnson saw the flash of the muzzle and fell to the ground. Defendant stood over him and fired two or three more shots.

Johnson called out to Duran and her boyfriend. He told them and a responding police officer that defendant (whom he called either "Rigo" or "Regal") had shot him. Johnson was treated at the hospital for gunshot wounds.[3] A bullet lodged in his neck was deemed too dangerous to remove and was left in place. Another bullet passed through his body, narrowly missing various vital organs. Johnson gave an account of the events to police officers at the hospital, including an identification of defendant from a six-pack photographic lineup.[4]

On the night of the incident, Duran told an officer that she received a text message from Camacho before the shooting, indicating defendant was going to try to kill Johnson.

Camacho told an officer that Johnson had stopped by her apartment after the fight and left, walking in the direction of his apartment. She saw defendant in the street, asking someone where to find Johnson. She sent the text message to Duran because she

---

[3] Johnson had consumed alcohol, marijuana, and methamphetamine prior to the shooting.

[4] Johnson did not identify defendant at the preliminary hearing but made an in-court identification at trial.

feared that defendant, who looked like a gang member, was going to kill Johnson. Camacho recanted these statements at trial.

In a statement also recanted at trial, Butler told an officer on the night of the shooting that she had seen defendant stop his car in front of Johnson's apartment. Butler later identified a photograph of defendant.

## DISCUSSION

### *Asserted Batson/Wheeler Error*

Defendant argues the trial court failed to conduct a complete review of the prosecutor's pattern of improper use of peremptory challenges to excuse four Hispanic jurors. The court examined only the basis for the challenge to the last juror, Juror No. 2, despite defense counsel's objection to the pattern of discriminatory challenges. Defendant reasons the case must be remanded to allow the trial court to examine whether the challenges to the three other jurors were proper under *Batson/Wheeler*. We disagree and conclude the trial court properly addressed the issue presented to it by the objection.

After extensive voir dire by the trial court and both counsel, and the exercise of multiple peremptory challenges by both sides, the prosecution excused Juror No. 2. A discussion was held at the bench at the request of defense counsel, who made "a *Batson/Wheeler* motion. [The prosecution] has now kicked off four Hispanic people. Three females, one male. She has released other people too. I think there is kind of a consistent pattern biased against my client, who is Hispanic. I'm asking the court to make an inquiry into her reasons as to why."

The trial court stated it was "looking for issues of specific bias" and asked the prosecutor to "elaborate." The prosecutor said she had only brought her notes on the last juror to the bench and offered to get the notes on the other jurors. The court said it was only asking about "the last one." The prosecutor explained the juror admitted being involved in numerous fights in school, and she did not want a juror who would say what

4

motivates someone to retaliate since that is an issue in the case. The court agreed that is an issue because the case involved a physical altercation that escalated to additional violence. Based on these facts, the court denied the *Batson/Wheeler* motion.

The standard for reviewing a *Batson/Wheeler* motion is well established. State and federal constitutional authority imposes a three-step inquiry: "First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge based on race. Second, if the showing is made, the burden shifts to the prosecutor to demonstrate that the challenges were exercised for a race-neutral reason. Third, the court determines whether the defendant has proven purposeful discrimination. The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. (*Rice v. Collins* (2006) 546 U.S. 333, 338.) The three-step procedure also applies to state constitutional claims. [Citations.]" (*People v. Lenix* (2008) 44 Cal.4th 602, 612-613 (*Lenix*).)

The trial court's determination that the prosecution's motive for the challenge was nondiscriminatory presents a question of fact, which we review using the substantial evidence standard. (*Hernandez v. New York* (1991) 500 U.S. 352, 364–365; *Lenix*, *supra*, 44 Cal.4th at pp. 613-614.) Assessing the credibility of a prosecutor's race-neutral explanations is uniquely a function of the trial court. The court can measure the credibility of a proffered rationale by a number of factors, including the prosecutor's demeanor, the reasonableness of the explanations, and whether they have some basis in accepted trial strategy. (*Id.* at pp. 614-616, citing *Miller-El v. Cockrell* (2003) 537 U.S. 322, 338-339.)

Here, defense counsel objected on the basis that the peremptory challenge of Juror No. 2 was part of a pattern of discriminatory challenges. The issue can be analyzed two ways. First, by expressly limiting the inquiry to Juror No. 2, the trial court impliedly determined there was no prima facie case that any of the other challenges were discriminatory. The court directly asked the prosecutor to "elaborate" as to Juror No. 2 and accepted the explanation that the instant case involved retaliation following a fight. Juror No. 2 had admitted engaging in fights while in school, and the prosecutor did not

want a juror who might offer explanations for why someone might retaliate after a fight. Defendant makes no argument that the court erred in accepting the prosecutor's explanation for the challenge

Second, the trial court may have determined the premise of defendant's motion—that the challenge of Juror No. 2 was part of a pattern of improper challenges—was not correct, as Juror No. 2 was excused for a valid reason. Once the premise of the motion was shown to be incorrect, the court was under no obligation to inquire further of the prosecutor. Defense counsel clearly understood this point, as he did not object that the court had failed to make a ruling as to the validity of the three other challenges. In fact, defense counsel never identified the three other jurors, so the court had no basis on which to determine if they were Hispanic and excused on the basis of ethnicity.

We further note that in defendant's opening brief, he makes no attempt to identify which jurors he believes were in dispute based on the motion, nor does he argue that the prosecutor excused any juror for an improper purpose. Defendant has failed to sustain his burden of demonstrating prejudicial error.

### *Denial of Mistrial Motion*

The prosecutor unsuccessfully moved prior to trial to admit evidence that defendant was a gang member. The trial court excluded any mention of gang evidence. However, an officer testified that Camacho had explained she sent a text message to Duran indicating defendant was coming to kill Johnson because they had just fought and defendant looked like a gang member. The court admonished the jury to only consider the statement for the limited purpose of explaining why Camacho sent the text message. The jury was told not to conclude that defendant was a gang member or that he has a propensity to commit crimes. The court denied a motion by defendant to strike the evidence, as well as defendant's subsequent motion for mistrial. In its formal instructions to the jury, the court specifically advised the jurors of the limited purpose of the evidence.

Defendant now argues the trial court erred in various ways. First, defense counsel had requested to approach the bench before the officer testified to Camacho's belief that defendant was a gang member, but the court had improperly denied the request. Second, gang evidence is inherently prejudicial, it should not be admitted unless relevant to an issue in dispute, and there was no evidence of gang activity or motive in this case. Third, Camacho's belief about defendant's status as a gang member had minimal relevance in the case. Fourth, the court's admonition to the jury was insufficient to negate the incurable harm of the testimony. And fifth, the court compounded the error by admitting a photograph of defendant at the time of his arrest that revealed his tattoos.

There is no necessity to address the merits of defendant's various contentions, as any error was nonprejudicial under both state and federal law. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *Chapman v. California* (1967) 386 U.S. 18, 24.) Camacho's belief that defendant looked like a gang member was no more than a brief statement of her opinion in a lengthy trial. The tattoos were never identified to the jury as showing gang affiliation or membership, and there was no reference to gang motivation during the presentation of evidence or in argument to the jury. The jury was admonished both during trial and in formal instructions[5] of the limited purpose of the evidence. "We presume that jurors comprehend and accept the court's directions. [Citation.] We can, of course, do nothing else. The crucial assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions.' (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.)" (*People v. Homick* (2012) 55 Cal.4th 816, 867.)

---

[5] Pursuant to CALCRIM No. 1403, the jury was instructed that defendant "has been referred to as a gang member. This evidence was not admitted for the truth of the matter asserted. In other words, it was not admitted to prove defendant is a gang member. [¶] You may consider this evidence only for the limited purpose of explaining what may have motivated a witness to refer to the defendant in such a manner. [¶] You may not consider this evidence for any other purpose. You may not conclude from this evidence that defendant is a person of bad character or that he has a disposition to commit crime."

Moreover, this was not a close case. There is no dispute in the evidence that defendant fought with Johnson, and that Johnson prevailed in the fight, providing defendant with a strong motive to retaliate. Camacho saw and heard defendant, which alarmed her sufficiently to text Duran about the threat defendant posed to Johnson. Butler saw defendant drive and stop at the location of Johnson's apartment, where the shooting occurred. Johnson saw defendant, face-to-face, at the time of the shooting. Johnson promptly told Duran and an officer he had been shot by defendant. In the hospital, Johnson identified defendant's photograph as the shooter.

Finally, the jury deliberations are consistent with the conclusion defendant did not suffer prejudice from the gang reference or the photo. The jury did not return an immediate verdict, indicating it was not biased as a result of the gang reference or photo showing tattoos. To the contrary, the jury asked for a rereading of testimony of statements defendant made to medical personnel regarding who shot him. The jury also requested a transcript of an officer's testimony regarding the night of the incident, although it later cancelled the request. The jury began deliberations at 9:33 a.m. and did not indicate it had reached a verdict until 4:17 p.m.

Taking into account all of the circumstances, we are satisfied there is no reasonable probability under state law, or reasonable possibility under federal constitutional law, of a result more favorable to defendant had the challenged evidence not been admitted.

8

**DISPOSITION**

The judgment is affirmed.

KRIEGLER, J.

We concur:

MOSK, Acting P. J.

KUMAR, J.*

---

*        Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.